Elliot Gale (Bar #263326)
egale@gajplaw.com
Joe Angelo (Bar #268542)
jangelo@gajplaw.com
Gale, Angelo, Johnson, & Pruett, P.C.
1430 Blue Oaks Blvd., Ste. 250
Roseville, CA 95747
916-290-7778 ph
916-721-2767 fax

Attorneys for Plaintiff
Kaden Laursen

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

|  |  |
|---|---|
| Kaden Laursen<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>Experian Information Solutions, Inc.;<br>Equifax Information Services, LLC;<br>Upstart Network, Inc.<br><br>　　　　　　　Defendants. | CASE NO. 8:21-cv-01101<br><br>COMPLAINT FOR DAMAGES:<br><br>1. Violation of Fair Credit Reporting Act;<br>2. Violation of the California Consumer Credit Reporting Agencies Act |

COMES NOW Plaintiff Kaden Laursen, an individual, based on information and belief, to allege as follows:

### **INTRODUCTION**

1. This case arises under the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b), 15 U.S.C. § 1681e(b), 15 U.S.C. § 1681i(a)(2)(A)), 15 U.S.C. §

1681i(a)(4)), 15 U.S.C. §1681i(a)(5)(A)), and the California Consumer Credit Reporting Agencies Act, California Civil Code §1785.25(a).

2. Plaintiff seeks redress for the unlawful and deceptive practices committed by the Defendants in connection with their inaccurate, misleading, or incomplete reporting of Plaintiff's debt included and discharged in Plaintiff's Chapter 7 bankruptcy.

3. Defendant Upstart Network, Inc. (hereinafter "Upstart") is reporting Plaintiff's account as being charged off and in collections despite being discharged in Plaintiff's chapter 7 bankruptcy.

4. Such reporting is wholly inaccurate, misleading, and adversely impacts Plaintiff's credit worthiness.

5. Plaintiff's credit score has been adversely impacted by the reporting.

6. Plaintiff's credit reports have been disseminated to third parties since the entry of his discharge and Plaintiff has been unable to obtain favorable interest rates due to the reporting by Upstart and its failure to properly update its tradeline and follow the Metro 2 reporting standards.

7. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

## <u>JURISDICTION & VENUE</u>

8. Plaintiff re-alleges and incorporates herein by this reference the allegations in each and every paragraph above, fully set forth herein.

9. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337, and 1367, and 15 U.S.C. § 1681

10. This venue is proper pursuant to 28 U.S.C. §1391(b)(1).

11. Plaintiff resides within the Western District of California.

## GENERAL ALLEGATIONS

12. Plaintiff alleges that each and every defendant data furnisher was included in Plaintiff's Chapter 7 bankruptcy filing or had notice of Plaintiff's bankruptcy filing and discharge.

13. Plaintiff alleges that Upstart received notice of Plaintiff's chapter 7 filing or had reason to know of Plaintiff's bankruptcy filing and discharge.

14. Plaintiff alleges that each and every Defendant is familiar with credit reporting industry standards and subscribes thereto.

15. Plaintiff alleges that each and every Defendant understands that deviation from credit reporting industry standards can and often does result in denial of credit, higher interest rates, and prompts those making credit decisions to draw a more negative inference from the reported data than if the Defendant reported in accordance with the recognized industry standard.

16. Plaintiff alleges that all actions alleged herein by Defendants were done knowingly, intentionally, and in reckless disregard for credit reporting industry standards in an attempt to purposefully undermine Plaintiff's ability to reorganize and repair Plaintiff's FICO Score.

17. In the alternative Plaintiff alleges that each and every Defendant's actions was the result of reckless policies and procedures that inevitably led to inaccurate, misleading, or incomplete credit reporting.

### FICO, Inc.

18. FICO is a leading analytics software company with its principal headquarters located in San Jose California. FICO has over 130 patents related to their analytics and decision management technology, and regularly uses mathematical algorithms to predict consumer behavior including credit risk.

19. The FICO Score has become the standard measure of consumer credit risk in the United States and is used in ninety percent of lending decisions.

20. A FICO score consists of a three-digit number summarizing a consumer's credit risk or likelihood to repay a loan. FICO periodically updates its scoring models resulting in multiple FICO Score versions.

21. Base FICO Scores range from 300 to 850, while industry-specific FICO Scores range from 250-900. A higher FICO Score demonstrates lower credit risk or less likelihood of default.

22. Different lenders use different versions of FICO Scores when evaluating a consumer's credit worthiness.

23. There are 28 FICO Scores that are commonly used by lenders.

24. A consumer's FICO Score is calculated based solely on information in consumer credit reports maintained at credit reporting agencies (CRAs).

25. The three largest CRAs are Experian Information Solutions, Inc.; Equifax, Inc. and Transunion, LLC.

26. FICO does not control what information is provided on a consumer's credit report. Instead, the scoring models or algorithms are based on the premise that information provided by the CRAs is accurate and complies with credit reporting industry standards.

27. There are five key factors that a FICO Score considers: 1) Payment History 2) Amount of Debt 3) Length of Credit History 4) New Credit and 5) Credit Mix.

28. Each of the five factors is weighted differently by FICO.

29. 35% of a consumer's FICO Score relates to payment history, 30% relates to the amount of debt, 15% relates to the length of credit history, 10% relates to new credit, and the last 10% relates to a consumer's credit mix or the different types of debts reported.

30. Payment history refers to whether a consumer has paid their bills in the past, on time, late or missed payments. The more severe, recent, and frequent the late payment information, the greater the impact on a FICO Score.  Public record items such as bankruptcy, foreclosure, judgments, and wage garnishments are also considered part of a consumer's payment history.

31. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently this occurred, and how many delinquent accounts exist.

32. Once a delinquent account has been remedied the longer the account stays current the more a consumer's FICO Score should increase.

33. FICO Scores are entirely dependent upon information provided by data furnishers (DFs) to CRAs.

34. The FICO scoring formula treats both Chapter 7 and Chapter 13 Bankruptcies similarly in terms of their impact on one's FICO Score. Specifically, both Chapters have the same level of severity with respect to their FICO Score and for both, FICO uses the FILING DATE to determine how long ago the bankruptcy took place.

**Metro 2**

35. The Consumer Data Industry Association is an international trade association representing the consumer credit, mortgage reporting, employment and tenant screening and collection service industries.

36. The credit reporting industry has adopted a standard electronic data reporting format called the Metro 2 format. The Metro 2 format was developed by the CDIA in an effort to universally report debts in a particular manner that is understood to be the most accurate way in which to report a debt. Specifically, Metro 2 format was designed to allow

5

reporting of the most accurate and complete information on consumer's credit history.

37. The CDIA's Metro 2 format is the credit reporting industry standard for accurate credit reporting.

38. The credit reporting industry at large depends upon Metro 2 and the CDIA's recommendations for reporting debt accurately.

39. The CDIA is *The* expert on accurate credit reporting. In support of this allegation Plaintiff avers the following:

    a.  The CDIA offers a FCRA certificate program for all CRAs.

    b.  The CDIA offers a FCRA awareness program for all CRAs.

    c.  The CDIA offers a FCRA Certificate program for DFs.

    d.  The CDIA offers a FCRA awareness program for DFs.

    e.  The CDIA offers a Metro 2 Learning system to provide detailed instructions on the use of Metro 2 format to ensure understanding of the reporting guidelines for each field of the Metro 2 Format as well as the relationship between multiple fields.

    f.  The CDIA hosts workshops developed and authorized by Equifax, Experian, Innovis, and Transunion.

    g.  The CDIA developed a credit reporting resource guide for accurately reporting credit.

40. The CDIA's Metro 2 is accepted by all CRAs.

41. The credit reporting accepted industry standards for reporting Metro 2 accurately are found in the CDIA's credit reporting resource guide (CRRG).

42. The CRRG outlines the industry standards for most accurately reporting debts using Metro 2.

43. The three main credit bureaus helped draft the CRRG.

44. The CRRG is not readily available to the public. It can be purchased online for $229.45.

45. Even if a buyer is ready willing and able to pay for the CRRG, the CDIA will NOT grant access to the guide unless the buyer represents an organization included in the Metro 2 Access Policy.

46. When FICO calculates credit scores the algorithms use Metro 2 information based on industry standards established by the CDIA.

47. The algorithms used by FICO in determining a consumer's credit score are premised on the Metro 2 data received comporting with the CDIA's recommendations for accurate credit reporting.

48. If the Metro 2 data received by FICO deviates from industry standards an inaccurate or incorrect FICO Score results. If the resulting FICO Score is lower a consumer will be considered a higher credit risk resulting in less favorable lending terms.

### e-OSCAR

49. E-OSCAR is the web-based Metro 2 compliant system developed by Experian Information Solutions, Inc.; Equifax, Inc.; TransUnion, LLC and Innovis that enables DFs and CRAs to create and respond to consumer credit disputes.

50. When a consumer sends a dispute letter to a CRA the CRA then sends an automated credit dispute verification (ACDV) via e-Oscar to the DF.

51. The ACDV contains Metro 2 codes next to certain data fields associated with a credit file e.g. "Account Type" "07" (07 in Metro 2 refers to a Charge Account).

### Bankruptcy Credit Reporting Industry Standards & Consumer Information Indicator

52. When a consumer files bankruptcy certain credit reporting industry standards exist.

53. Certain Metro 2 data is regularly expected and calculated by FICO when determining a consumer's credit worthiness.

54. The Consumer Information Indicator (CII) is a critical field in the Metro 2 Format that indicates a special condition that applies to a specific consumer.

55. Under Metro 2 the CII must be reported only on the consumer to whom the information applies.

56. It is the credit reporting industry standard to report a very specific CII upon the filing of a consumer bankruptcy.

57. In the consumer bankruptcy context CII Metro 2 Code "A" denotes that a petition for Chapter 7 has been filed, is active, but no discharge has been entered.

58. CII Metro 2 Code "D" indicates that a Chapter 13 petition has been filed, is active, but no discharge entered. This is usually translated on a consumer credit report as "Wage Earner Plan" or "WEP" in the "Account Status" portion of a trade line. Such reporting alerts any potential lender that the account is no longer in a collectable status but is being handled by a Chapter 13 trustee.

59. The CII Metro 2 Code "Z" indicates that a bankruptcy petition has been filed but the chapter is undesignated/unknown.

60. The CII Metro 2 Code "E" denotes that a Chapter 7 bankruptcy has been discharged.

61. The CII Metro 2 Code "H" denotes that a Chapter 13 bankruptcy has been discharged.

62. The CII field is a critical field for consumers and directly relates to and impacts a consumer's credit worthiness.

63. The lack of a CII reported makes it appear that a consumer has not addressed outstanding debt obligations through the bankruptcy process.

64. The lack of a CII reported also suggests that creditors are free to collect against a consumer as an individual or that no stay exists to prevent *in personam* collection activity.

65. Failure to report the correct CII indicator will prompt those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

66. Under the Fair Credit Reporting Act a bankruptcy can be reported for ten years.

67. The ten-year rule for reporting runs from the date the bankruptcy was *filed.*

68. A consumer's FICO Score is directly related to the date on which a petition is filed and acknowledged.

69. The more time that has passed since the filing of the bankruptcy, the less negative impact the bankruptcy will have on a consumer's FICO Score.

70. Failure to reference the bankruptcy filing (CII field) and or the correct petition date shall result in a lower FICO Score resulting in those making credit decisions to draw a more negative inference regarding a consumer's credit worthiness.

**Plaintiffs Bankruptcy Filing**

71. Plaintiff filed for Chapter 7 bankruptcy protection on March 4, 2020 in order to discharge various debts and improve Plaintiff's credit worthiness and FICO Score.

72. Plaintiff received his Chapter 7 discharge on June 22, 2020.

73. On August 3, 2020 Plaintiff ordered a credit report from Experian, Equifax, and TransUnion to ensure proper reporting by Plaintiff's creditors after completion of his chapter 7 bankruptcy.

74. Plaintiff noticed several different trade lines on the August 3, 2020 credit report all reporting inaccurate, misleading, or incomplete information that did not comply with credit reporting industry standards.

75. An account with Upstart reported Plaintiff's account as being charged off and in collections after entry of his discharge.

76. In response, Plaintiff disputed the inaccurate Upstart tradeline via certified mail with Experian, Equifax, and TransUnion on September 28, 2020.

77. Plaintiff's dispute letter specifically put defendant Upstart on notice that Plaintiff had filed for bankruptcy and received a discharge and that the account should be updated to reflect the bankruptcy discharge and not be listed as charged off.

78. Plaintiff is informed and believes that each CRA received Plaintiff's dispute letter and in response sent Plaintiff's dispute to each DF via an ACDV through e-OSCAR.

79. Plaintiff ordered a second credit report on November 3, 2020 from Experian for the sole purpose to ensure Plaintiff's account with Upstart had in fact been updated.

80. The Upstart account listed above had not been updated and was still reporting the account as charged off rather than included/discharged in bankruptcy.

81. Plaintiff

**Inaccuracy – Upstart**

82. Plaintiff was frustrated to see that Defendant Upstart did not properly update the accounts but instead continued to report Plaintiff's account as being charged off and in collections after plaintiff received a discharge.

83. Upstart did not update Plaintiff's credit report to indicate that the account was included and discharged in bankruptcy and instead continued to report on Plaintiff's credit report as if no bankruptcy were filed.

84. Therefore, it appears that Upstart can still collect against Plaintiff and that the Upstart account was not included and discharged in bankruptcy.

85. Upstart has failed to report anything whatsoever that would alert creditors that Upstart can no longer collect against Plaintiff on that debt.

**Willfulness**

86. This was not a negligent act by Defendant Upstart but instead an intentional act to purposefully undermine Plaintiff's ability to effectively restore Plaintiff's credit through bankruptcy.

87. Upstart is not following industry standards and is not listing the correct consumer information indicator (CII) as the CII should have been updated to E as Plaintiff's bankruptcy has been discharged.

88. By indicating that the account status as charged off without noting the chapter 7 bankruptcy discharge it appears that Plaintiff has failed to address this outstanding debt thus making Plaintiff less credit worthy.

89. Upstart reporting makes Plaintiff appear less credit worthy because, if the CII E were reported the charged off and collection notations would be replaced with a status of included and discharged in bankruptcy.

90. Such a notation alerts lenders that Plaintiff's debt with Upstart has been included and discharged in bankruptcy rather than still collectible.

91. Once Upstart received Plaintiff's dispute rather than acknowledge the bankruptcy filing and subsequent discharged, Upstart noted the account as

being charged off and in collections rather than simply list that the account was included and discharged in bankruptcy.

92. Rather than mark the account as included and discharged in bankruptcy Upstart continues to report the account delinquent i.e. charged off and in collections with the hope that Plaintiff will pay the account at some point in the future.

93. Upstart also specifically notated that Plaintiff had a negative payment rating and/or payment history in October of 2020, nearly four months after entry of Plaintiff's chapter 7 discharge.

94. The negative notation was transmitted by Upstart after Plaintiff disputed the derogatory Upstart tradeline.

95. Plaintiff believes the reporting of the inaccurate and misleading information was done by Upstart with the specific intent to have Plaintiff make a payment on the account in order to have the negative information removed from his credit report.

96. Upstart's post-discharge update on the account was done to harm Plaintiff's credit report and ignored the requirements of the Metro-2 reporting.

97. Such a scheme directly undermines the integrity of not only the bankruptcy court but also the integrity of the credit reporting system at large.

**Damages**

98. As a result of the incorrect reporting, Plaintiff has suffered economic loss, diminished credit, emotional harm, and excessive stress resulting in doubt as to the effectiveness of the Bankruptcy Code.

99. Plaintiff is frustrated and annoyed that his credit score has not improved since the discharge of his chapter 7 bankruptcy as he believed the account with Upstart was discharged.

100. Plaintiff's anxiety and stress has increased significantly as he learned that Upstart was not acknowledging the bankruptcy discharge and believes that Upstart can still collect on the account.

101. The inaccuracy has been transmitted to third parties.

102. Plaintiff's credit score has remained at a low level as a result of the Upstart reporting, preventing him from rebuilding his credit and qualifying for financing.

103. The actions of Experian, Equifax and Upstart as alleged herein are acts in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681s-2(b).

## FIRST CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681e(b))
Against Defendants)

**Experian and Equifax – Failure to Assure Credit Reporting Accuracy.**

104. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

105. Experian and Equifax violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's credit reports and credit files it published and maintained concerning Plaintiff.

106. Had Experian and Equifax maintained reasonable procedures to assure maximum accuracy Experian and Equifax would never have allowed Defendant Upstart to report the account as described herein.

107. As a result of Experian and Equifax's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including but not limited to: diminished credit, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

**Willfulness**

108. The violations described herein by Experian and Equifax were willful, specifically the Credit Bureaus have intentionally and purposefully set up a system where inaccuracies are not only probable but inevitable.

109. Experian and Equifax intentionally send consumer disputes to employees who do not live within the continental United States.

110. This is done intentionally to hide and or subvert a consumer's ability to confront individual directly responsible for approving accurate reporting.

111. These employees for Defendants Experian and Equifax receive little to know training concerning how to accurately report consumer debt.

112. Instead, these employees are simply instructed to parrot whatever information a data furnisher provides regardless of whether or not that information is accurate. *See Saez v. Trans Union,* LLC, 621 F.Supp. 2d 1074, 1083, 1088 (D.Or. 2007); *Grigoryan v. Experian Info. Sols*., Inc., 84 F. Supp. 3d 1044, 1091 (C.D. Cal. 2014); *Haykuhi Avetisyan v. Experian Info Sols*., No. CV 14-05276-AB (ASX)

113. Experian and Equifax employees are regularly expected to review and approve over 90 disputes per day rendering less than five minutes to review, investigate, and respond to each dispute received.

114. Experian and Equifax have intentionally setup this system to undermine, hide, and otherwise frustrate consumers' ability to properly dispute and correct credit reports.

115. Experian and Equifax also allowed Upstart to report the account post chapter 7 discharge with actual knowledge of Plaintiff's chapter 7 filing and subsequent discharge.

116. Experian and Equifax knew Plaintiff filed bankruptcy and received a discharge and yet somehow allowed Upstart to report inaccurately and obviously outside of recognized industry standards.

117. Given that Experian and Equifax helped draft the CRRG, and Plaintiff specifically referenced industry guidelines in the dispute letter Experian knew that the Upstart account was not reporting in a manner consistent with industry standards i.e. accurate, but chose to do nothing.

118. Consequently, Defendant Experian and Equifax is liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, Experian and Equifax were at least negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

119. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## SECOND CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681s-2(b))
Against Defendants)

**Upstart – Failure to Reinvestigate.**

120. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

121. 15 USC 1681s-2(b) and 15 USC 1681i-(a)1 prohibits furnishers from providing any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate or misleading and requires a furnisher to update and or correct inaccurate information after being notified by a consumer reporting agency of a dispute by a consumer.

122. Defendant Upstart  violated section 1681s-2(b) by failing to conduct a reasonable investigation and re-reporting misleading and inaccurate account information.

123. The CRAs provided notice to Upstart that Plaintiff was disputing the inaccurate and misleading information, but Upstart failed to conduct a reasonable investigation of the information.

124. Based on Plaintiff's dispute, Upstart should have known its account was included in Plaintiff's Chapter 7 discharge.

125. The most basic investigation would include a simple review of well-established credit reporting industry standards.

126. Plaintiff alleges Upstart did not review well established industry standards for credit reporting.

127. If Upstart had reviewed such standards Upstart would have seen its reporting was not in compliance and consequently inaccurate and or incomplete.

128. Instead Upstart, in October of 2020, transmitted additional negative account information.

129. Such an investigation would be reasonable.

130. Plaintiff also alleges that Upstart did not investigate whether Plaintiff filed for bankruptcy and whether a discharge was entered.

131. The lack of investigation is unreasonable.

132. Plaintiff further alleges that Upstart have not properly trained those directly investigating disputes on Metro 2 generally or credit reporting industry standards and as such have developed reckless policies and procedures.

**Experian and Equifax – Failure to Reinvestigate Disputed Information.**

133. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

134. After Plaintiff disputed the accounts mentioned above, Experian and Equifax was required to conduct a reasonable investigation and to delete any information that was not accurate under 15 USC 1681i-(a)1.

135. Experian and Equifax failed to conduct a reasonable investigation and failed to correct the misleading and or inaccurate statements on the account within the statutory time frame or at all.

136. Plaintiff alleges that Experian and Equifax has its own independent duty to conduct a reasonable investigation 15 USC 1681i-(a)1.

137. Experian and Equifax are not passive entities bound to report whatever information a data furnisher, such as Upstart, provides.

138. Plaintiff alleges that Experian and Equifax are readily familiar with Metro 2 guidelines and credit reporting industry standards given that Equifax helped draft said guidelines.

139. In fact, Experian and Equifax sponsors and authorizes workshops hosted by the CDIA that teach the following to Data Furnishers:

   a.   Do not report delinquencies post-petition pre discharge in the payment history section regardless of Chapter 7 and instead report the Metro 2 indicator E once a discharge is entered.

   b.   The above reporting is the correct and accurate way to report debts included in consumer bankruptcy filings.

140. Given the aforementioned, Plaintiff alleges that Experian and Equifax can and do suppress inaccurate information from being reported when DFs provide inaccurate information.

141. Experian and Equifax can and does instruct DFs on how to properly report certain accounts from time to time upon request from the DF.

142. Experian and Equifax failed to conduct a reasonable investigation because any basic investigation would have uncovered that certain DFs were not following credit reporting industry standards.

143. Experian and Equifax would have known that Plaintiff filed for Chapter 7 based on multiple other accounts reporting as much.

144. Experian and Equifax would have known that Plaintiff received a chapter 7 discharge based on multiple other accounts reporting as much.

145. Experian and Equifax would have known that failure to report a CII given that a Chapter 7 was filed did not comply with industry standards.

146. In fact, Experian and Equifax knew plaintiff filed for chapter 7 bankruptcy because its own public records section reflects that Plaintiff filed bankruptcy.

147. Experian and Equifax therefore did not do the most basic investigation regarding credit reporting industry standards otherwise the aforementioned would have been uncovered.

148. Experian and Equifax intentionally, willfully or with reckless disregard for Plaintiff's accuracy did no investigation whatsoever given that Experian and Equifax general policy is to simply parrot whatever information a data-furnishers sends.

149. Such policy and procedure inherently lead to inaccurate information being reported and therefore such an investigation is wholly unreasonably and reckless i.e. willful.

### **THIRD CAUSE OF ACTION**
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(4))
Against Defendants)

**Experian and Equifax – Failure to Review and Consider All Relevant Information.**

150. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

151. Experian and Equifax violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

152. As a result of Experian and Equifax's violations of 15 U.S.C. § 1681i(a)(4), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

153. The violations by Experian and Equifax were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

154. In the alternative, Experian and Equifax were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

155. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FOURTH CAUSE OF ACTION
(Violation of Fair Credit Reporting Act 15 U.S.C. § 1681i(a)(5)(A)
Against Defendants)

**Experian and Equifax – Failure to Delete Disputed and Inaccurate Information.**

156. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

157. Experian and Equifax violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the item of information upon a lawful reinvestigation.

158. As a result of Experian and Equifax's violation of 15 U.S.C. § 1681i(a)(5)(A), Plaintiff suffered actual damages, including but not limited to, damage to reputation, embarrassment, humiliation, and other mental and emotional distress.

159. The violations by Experian and Equifax were willful, rendering each of the Defendants individually liable for punitive damages in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n.

160. In the alternative, Experian and Equifax were negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

161. Plaintiff is entitled to recover actual damages, statutory damages, costs and attorney's fees from Experian and Equifax in an amount to be determines by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

## FIFTH CAUSE OF ACTION
(Violation of California Consumer Credit Reporting Agencies Act
California Civil Code § 1785.25(a) Against Defendants)

**Upstart – Reporting Inaccurate Information to CRAs.**

162. Plaintiff realleges and incorporates herein the allegation in each and every paragraph above as though fully set forth herein.

163. In the regular course of its business operations, Upstart routinely furnish information to credit reporting agencies pertaining to transactions between Defendants and Defendant's consumers, so as to provide information to a consumer's credit worthiness, credit standing and credit capacity.

164. Upstart intentionally and knowingly reported misleading and inaccurate account information to the CRAs that did not follow with well-established industry standards.

165. Plaintiff alleges that Upstart re-reported the information contained herein in violation of California Civil Code § 1785.25(a).

166. Plaintiff also allege that Upstart had reason to know that the information reported on Plaintiff's account were misleading, inaccurate, and incomplete.

167. Plaintiff alleges that Upstart had reason to know that by not complying with well-established industry standards lenders will draw a more negative inference with respect to Plaintiff's credit worthiness.

168. Plaintiff alleges that the dispute letters from all three credit reporting agencies, the consumer data industry resource guide, and results of its investigation should have provided notice to Upstart of its misleading and inaccurate reporting.

169. Upstart failed to notify Experian and Equifax that the information Upstart re-reported was inaccurate before the end of 30 business days, in violation of California Civil Code § 1785.25(a).

170. Upstart's communications of false information, and repeated failures to investigate, and correct their inaccurate information and erroneous reporting were done knowingly, intentionally, and in reckless disregard for their duties and Plaintiff's rights.

171. As a direct and proximate result of Upstart's willful and untrue communications, Plaintiff has suffered actual damages including but not limited to reviewing credit reports from all three consumer reporting agencies, time reviewing reports with counsel, sending demand letters, diminished credit score, denial of credit, and such further expenses in an amount to be determined at trial.

Wherefore, Plaintiff prays for judgment as hereinafter set forth.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

1. For preliminary and permanent injunctive relief to stop Defendants from engaging in the conduct described above;

2. Award statutory and actual damages pursuant to 15 U.S.C. § 1681n and California Civil Code § 1785.31;

3. Award punitive damages in order to deter further unlawful conduct

pursuant to 15 U.S.C. § 1681n; and California Civil Code § 1785.31

4. Award attorney's fees and costs of suit incurred herein pursuant to 15 U.S.C. § 1681n & o; California Civil Code § 1785.31;

5. For determination by the Court that Creditor's policies and practices are unlawful and in willful violation of 15 U.S.C. § 1681n, et seq.; and

6. For determination by the Court that Creditor's policies and practices are unlawful and in negligent violation of 15 U.S.C. § 1681o.

**Gale, Angelo, Johnson, & Pruett, P.C.**

Dated: June 24, 2021                         */s/ Joe Angelo*
                                              Joe Angelo
                                              Elliot Gale
                                              Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of this matter by jury.

**Gale, Angelo, Johnson, & Pruett, P.C.**

Dated: June 24, 2021                         */s/ Joe Angelo*
                                              Joe Angelo
                                              Elliot Gale